UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:   Jennifer M. Waite,<br><br>                    Debtor. | Case No. 12-31815<br>Chapter 7 |
| C. Channing Redfield,<br>                    Plaintiff,<br>   v.<br>Jennifer M. Waite,<br>                    Defendant. | Adv. Proc. No. 13-50019 |

Appearances:

Edward J. Fintel, Esq.
Edward J. Fintel & Associates, Attorneys for Plaintiff
P.O. Box 6451
120 Walton Street, Ste. 203
Syracuse, NY  13217-6451

David P. Antonucci, Esq.
Antonucci Law Firm, Attorneys for Defendant-Debtor
12 Public Square
Watertown, New York  13601

Hon. Margaret Cangilos-Ruiz, U.S. Bankruptcy Judge

### Memorandum-Decision and Order

C. Channing Redfield ("Plaintiff") objects in this adversary proceeding to the discharge of Debtor Jennifer M. Waite ("Debtor" or "Defendant") pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(2)(B) and (a)(4)(A). Plaintiff alternatively requests that the Debtor's underlying bankruptcy case be dismissed "for cause" as a bad faith filing pursuant to 11 U.S.C. § 707(a). Debtor answered in general denial and asserted several affirmative defenses. The court conducted a trial on the complaint on May 13, 2014.

1

As announced on the record of the hearing, in addition to the exhibits introduced into evidence at trial, the court takes judicial notice of the filings made in this adversary proceeding, as well as both those filed in the underlying bankruptcy case and in Debtor's prior bankruptcy (Case No. 12-30988). For the reasons which follow, the court sustains Plaintiff's objections and denies Debtor a discharge.

*Jurisdiction*

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and §§ 157(b)(2)(A) and (J). This memorandum-decision and order incorporates the court's findings of fact and conclusions of law as permitted by Fed. R. Bankr. P. 7052.

*Background Facts*

Plaintiff is a secured creditor of Debtor by virtue of a judgment in the amount of $58,469.07, obtained in New York State Supreme Court and recorded with the Jefferson County Clerk on May 2, 2012 ("Judgment"). The Judgment, entered against Debtor individually and Waite Enterprises, Inc., represents the unpaid balance owing on Debtor's purchase of a construction business from Plaintiff.[1] Joint Stipulation ("Stip.") ¶ 1; Plaintiff's Ex. 1; Answer ¶1.

On May 18, 2012, Debtor filed an individual chapter 13 petition under the name Jennifer M. Waite (the "Prior Case"). In her petition, Debtor did not identify her use within the prior 8 years of the name Jennifer Fuller. Case No. 12-30988, Doc. # 1. Debtor did not disclose on schedule A her remainder interest in a parcel of real property located at 440 S. Clinton Street, Carthage, NY ("Clinton Street Property").[2] *Id.*; Plaintiff's Ex. 4. On schedule B line #2, Debtor listed (i) a checking account, (ii) a savings account, (iii) a business checking account, and (iv) a

---

[1] Debtor is the sole director, officer and shareholder of Waite Enterprises, Inc. Answer ¶ 1.

[2] Debtor's parents hold a life estate in the Clinton Street Property. Debtor acquired her interest in the property by Warranty Deed, recorded June 6, 2006. Plaintiff's Ex. 4.

2

certificate of deposit, all held at Carthage Savings and Loan. The aggregate value of these deposit accounts, which were not claimed as exempt, was $28,000. Case No. 12-30988, Doc.# 1. Debtor scheduled Plaintiff as one of three unsecured creditors on her schedule F. Plaintiff's claim, which represented 98.9% of the unsecured debts, was scheduled as contingent, unliquidated and disputed. Although married, Debtor did not list any income attributable to her husband, Craig Waite, on either schedule I or Official Form 22C. *Id.*

The Prior Case was dismissed pursuant to a conditional order of dismissal without a plan having been confirmed. Case No. 12-30988, Doc. # 22. Within a matter of days, the chapter 13 trustee moved to vacate the dismissal, asserting that Debtor had "substantially complied" with the conditional order. Case No. 12-30988, Doc. # 25. Plaintiff opposed the trustee's motion. On the return date of the hearing on the motion, the trustee withdrew it. Neither Debtor nor her counsel, Mr. Antonucci, appeared at the hearing nor filed a written response to the trustee's motion. Instead, approximately two and a half weeks later, Debtor filed the instant case.

The instant case was initiated again under the name Jennifer M. Waite. As in the Prior Case, Debtor did not disclose (i) her prior use of the name Jennifer Fuller, (ii) her remainder interest in the Clinton Street Property or (iii) income attributable to her husband on either schedule I or Official Form 22C. Plaintiff's Ex. 2. In contrast to the Prior Case, Debtor did not schedule any bank accounts or certificates of deposit on schedule B. Although Plaintiff's claim was again scheduled as contingent, unliquidated and disputed, Plaintiff is the only unsecured creditor scheduled.[3] *Id.*

Debtor proposed a plan, virtually identical to that proposed in the Prior Case, which prompted objections by both Plaintiff and the chapter 13 trustee. Case No. 12-31815, Docs. #

---

[3] Debtor notated the listing on schedule F of Plaintiff's claim at $59,010.63 as follows: "less $6,000.00 that was taken from the business account." Plaintiff's Ex. 2.

3

20, 22. The court denied confirmation of Debtor's proposed plan, after which Debtor converted the case to chapter 7.

At the section 341 meeting, Debtor disclosed, inter alia, her remainder interest in the Clinton Street Property to the chapter 7 trustee.[4] Approximately two months later, Debtor amended her schedule A to list her remainder interest. Debtor scheduled the Clinton Street Property as having a value of $90,000, subject to a secured claim of $69,233.45. Plaintiff's Ex. 3. Debtor made no other amendments to her petition or schedules.

*Testimony at Trial*

Debtor testified that she married Craig Waite in July 2008, almost four years prior to her filing the Prior Case. Before her marriage to Mr. Waite, Debtor used the last name Fuller, a prior married name. Fuller is the name that Debtor was using at the time she received the remainder interest in the Clinton Street Property. Debtor is identified as "Jennifer Fuller" in the warranty deed that created her remainder interest. Plaintiff's Ex. 4.

Debtor's mother and step-father reside at the Clinton Street Property. Both are in their early to mid-sixties. Debtor's parents have a home equity loan secured by the property. Debtor knows of no other encumbrances against the property. At the request of the chapter 7 trustee, Debtor had an appraisal performed on the Clinton Street Property, which yielded a value of approximately $100,000. Contrary to the amended schedule A, at the time of the instant filing, the balance on the home equity loan was approximately $8,000-$10,000. Debtor testified that she mistakenly believed that the figure listed on amended schedule A ($69,233.45) indicated the equity in the house and not the amount of the claim secured against the property. Debtor has never had a valuation performed of her remainder interest in the property. Debtor testified that

---

[4] According to Plaintiff-counsel's affirmation in support of an order for a 2004 examination of the Debtor, the § 341 meeting was adjourned from June 10, 2013 to July 8, to permit Debtor to amend her schedules. Case No. 12-31815, Doc. # 34.

4

she received her interest in the property at her mother's request, in the event that her mother required placement in a nursing home.

Debtor has been employed as a real estate broker/agent for nine years. Stip. ¶ 18. For the past three years, she had been employed as an associate broker by TLC Real Estate. As part of her duties, she assists clients in the purchase and sale of real estate. Debtor is compensated solely by commission. Between July 2012 and July 2013, Debtor was paid $51,328.08 in commissions for sales that she brokered on behalf of TLC Real Estate. Plaintiff's Ex. 7.

Before filing the Prior Case, Debtor's regular practice was to cash her commission checks or deposit them into her accounts at Carthage Savings and Loan. Around the time of the prior filing, however, Debtor changed her normal practice and began, almost exclusively, cashing her commission checks. She would deposit only those funds necessary to cover her bills. Debtor avoided permitting her account balance to rise above $1,500 because, as she understood the matter, once the balance rose above that threshold, Plaintiff would be able to levy against the account.[5] Debtor placed the excess cash in her husband's gun safe that he kept at their residence. Debtor began keeping cash in the gun safe in May 2012, around the time "all this started." Although she could not recall the exact amount, Debtor admits that she failed to disclose that she had cash on hand in the safe as of the date of filing.[6]

Waite Enterprises, Inc. ("Waite") was formed approximately four years ago to run the contracting business that was purchased from Plaintiff. The corporation's formation was coincident with the purchase. Although Debtor was the sole shareholder, director and officer of

---

[5] Debtor testified at her 2004 Exam:
> [T]o be honest, I cashed my commission checks. . . . I don't put them in there because from what I understand, Channing can put a hold on my accounts if there's anything over, like 12 to 1500 at a time in there. So I'm not chancing that again.

Plaintiff's Ex. 10, p. 49.

[6] Debtor stated that the amount in the safe was likely around $1,500, but it could have been more.

5

Waite, Debtor's husband ran the business. Answer ¶ 1. The business ceased operating in May 2012, when the business and Debtor's personal bank accounts were frozen as a result of Plaintiff's enforcement of the Judgment.[7] Debtor filed the Prior Case, in part, to unfreeze her personal and business accounts. The $6,000 balance in the business account, which was scheduled in the Prior Case, ultimately was remitted to Plaintiff. After the freeze was released on her personal accounts, Debtor paid off certain business debts using her personal funds. Debtor paid some creditors more than $600, but did not disclose any such payments on her statement of financial affairs filed with the petition.

Since filing the Prior Case and the unfreezing of her accounts, Debtor has used only one bank account. Plaintiff's Ex. 6. That account, ending in 4005, is a joint account held by Debtor and her husband. Of the deposits made into the account between July 2012 and July 2013, Debtor attributed amounts that exceeded Debtor's real estate commissions to income received by her husband.

Debtor admitted that she did not "thoroughly" review the schedules in the instant case. In addition to the above non-disclosures, Debtor did not disclose ownership of a diamond ring and gold wedding band. Stip. ¶¶ 14-16. Nor did Debtor disclose that she was in possession of certain equipment owned by Waite Enterprises, Inc. Plaintiff's Ex. 10, pp. 60-61.

*Arguments of the Parties*

Plaintiff asserts that both in the year prior to filing and in the period since the filing, Debtor improperly concealed the following property: (i) her remainder interest in the Clinton Street Property, (ii) accounts maintained at Carthage Savings and Loan, (iii) certain accounts

---

[7] After the business ceased operations, Debtor's husband performed odd jobs and, by the fall of 2012, had gone back to school to become a home inspector. Mr. Waite completed his training and began working as a home inspector in January 2013. Sometime thereafter, Mr. Waite received $6,000 for work performed on his uncle's home during the fall of 2012.

6

receivable consisting of real estate commissions earned and owed as of the filing date and (iv) cash contained in her husband's gun safe. Plaintiff contends that Debtor's pattern of conduct demonstrates that she concealed these assets with the intent to hinder, delay or defraud her creditors. For that matter, Plaintiff notes that Debtor admits that certain acts were undertaken specifically to frustrate Plaintiff in his attempts to collect on the Judgment.

Plaintiff also asserts that debtor knowingly and fraudulently made false oaths on her petition, schedules and statement of financial affairs by deliberately omitting the above property as well as failing to disclose certain relevant information and financial transactions. Plaintiff contends that Debtor is unable to explain her omissions as carelessness or inadvertence. Plaintiff contends that Debtor's amendment of her schedule A is tainted not only because the amendment was inaccurate but also because Debtor did not amend her other schedules or statement of financial affairs.

Had the Debtor properly disclosed these assets, Plaintiff posits that it is likely that the chapter 7 trustee would have liquidated certain non-exempt assets,[8] thus allowing Plaintiff to be paid something on his claim. Furthermore, had Debtor confirmed a proper chapter 13 plan, Plaintiff would have been paid in full.

Alternatively, Plaintiff asserts that the case should be dismissed because the case was filed in bad faith. Acknowledging that the Second Circuit has yet to decide the issue, Plaintiff cites several decisions of courts in this circuit that have dismissed cases where a petition was not filed in good faith. Plaintiff asserts that several of the factors examined by those courts are present in the instant case.

---

[8] Plaintiff identifies Debtor's interest in the Clinton Street Property and certain real estate commissions allegedly due and payable to Debtor as of the date of the filing. In light of the other admitted, non-disclosed assets, the court declines to address the allegations regarding the real estate commissions, which were the subject of some disagreement on the issue of whether the commissions were, in fact, due and payable.

7

Debtor does not dispute the factual basis for Plaintiff's complaint insofar as she acknowledges the various omissions from her petition, schedules and statement of financial affairs. Debtor asserts, however, that the omissions and non-disclosures were inadvertent, unintended or innocent. Thus, she argues that she lacked the requisite culpable intent necessary to deny her the benefit of the discharge under either §§ 727(a)(2) or (a)(4)(A). Additionally, as to the § 727(a)(4)(A) claim, Debtor asserts that the omissions were immaterial to the case. Debtor denies that her petition was filed in bad faith.

## DISCUSSION

*Objections to Discharge*

The privilege of a discharge and the promise of a fresh start for the "honest but unfortunate debtor" is one of the central tenets underlying bankruptcy. *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006) (quoting *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991)). Where a party objects to a debtor's discharge, the court must construe section 727(a) "strictly against those who object . . . and liberally in favor of the [debtor]." *Pisculli v. T.S. Haulers, Inc. (In re Pisculli)*, 408 F. App'x 477, 479 (2d Cir. 2011) (quoting *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996)). The objecting party must prove the elements of the asserted § 727(a) cause of action by a preponderance of the evidence. Fed. R. Bankr. P. 4005.

*Section 727(a)(2) – Concealment of Assets*

Pursuant to § 727(a)(2), a debtor may be denied a discharge if the debtor transferred, destroyed or concealed property with the intent to hinder, delay or defraud creditors. Section 727(a)(2)(A) focuses upon the debtor's prepetition conduct, barring a discharge if the debtor—with improper intent—transferred, destroyed or concealed property within one year prior to

8

filing. Section 727(a)(2)(B) denies a discharge to a debtor who fraudulently transfers, destroys or conceals property of the estate after the filing of the petition.

Establishing a claim under section 727(a)(2) "requires a showing of actual intent to hinder, delay or defraud; a showing of constructive intent is insufficient." *Pisculli v. T.S. Haulers, Inc. (In re Pisculli)*, 426 B.R. 52, 66 (E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477. As it is rare for a debtor to freely admit the intent to hinder, delay or defraud creditors, the party objecting to discharge generally must rely upon circumstantial evidence or inferences drawn from a debtor's conduct. *See Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir. 1983); *Pisculli*, 426 B.R. at 66. As Debtor concedes, the determination regarding a debtor's intent often will turn on the court's assessment of the debtor's credibility.[9]

Here, it is not disputed that Debtor concealed property by failing to disclose certain assets and information on her petition and schedules and, thereafter, failing to amend the same. Among others, Debtor freely acknowledges that she failed to disclose her remainder interest in the Clinton Street Property, the deposit accounts at Carthage Savings and Loan and cash held in her husband's gun safe. Although Debtor amended her schedules to disclose her interest in the Clinton Street Property, her disclosure proved inaccurate. Further, this inaccurate disclosure was the only amendment to her schedules and petition. Accordingly, the sole issue is whether Debtor's acts and omissions were made with the intent to hinder, delay or defraud creditors.

It is not necessary for a complaining party to prove a fraudulent intent for discharge to be denied under § 727(a)(2). Instead, "it is sufficient if the debtor's intent is to hinder or delay a creditor." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010); *see Cadle Co. v. Marra (In re Marra)*, 308 B.R. 628, 630 (D. Conn. 2004). *But see Los Alamos Nat'l Bank v. Wreyford (In re Wreyford)*, 505 B.R. 47, 55–58 (Bankr. D. N.M. 2014). Debtor admits that her

---

[9] Defendant's Post-Trial Memorandum of Law, pp. 3, 5. Doc. # 19.

9

actions related to the cashing of her commission checks and sequestering funds in excess of $1,500 in the gun safe were taken specifically to prevent Plaintiff from levying upon her bank accounts and, thereby, frustrate his attempts to enforce the Judgment. Debtor also admits that in the brief period between the two bankruptcies, she used personal funds to pay other creditors of Waite Enterprises, Inc.—some in excess of $600—and failed to disclose these transactions. By Debtor's admissions alone, the court could find that Debtor had the requisite improper intent to deny her discharge under § 727(a)(2). *See Locke v. Schafer (In re Schafer)*, 294 B.R. 126, 130–31 (N.D. Cal. 2003). However, the court does not rest solely upon Debtor's admissions.

Based upon the totality of the evidence, including Debtor's admissions, the court finds that Debtor engaged in a pattern of conduct that demonstrates an actual intent to hinder, delay or defraud creditors. *See Structured Asset Servs., L.L.C. v. Self (In re Self)*, 325 B.R. 224, 239 (Bankr. N.D. Ill. 2005); *see generally Kaiser*, 722 F.2d at 1582–83 (discussing the "badges of fraud"). Among other things, Plaintiff is Debtor's sole unsecured creditor,[10] and although the claim has been reduced to judgment by the state court, Plaintiff's claim is inexplicably scheduled as contingent, unliquidated and disputed. Debtor could not adequately explain her failure to carefully review the instant petition and schedules, which not only perpetuated omissions from the prior schedules but also included new omissions—most notably the failure to schedule the bank accounts. Notwithstanding deficiencies identified in both the Plaintiff's and the chapter 13 trustee's objections to confirmation, Debtor failed to amend her petition and schedules until four months after the case was converted to chapter 7, and then did so in an incomplete and inaccurate manner.

---

[10] Although Debtor scheduled two additional unsecured creditors in the Prior Case, those claims, which represented just over 1% of the unsecured claims, were paid prior to the instant filing. Plaintiff's Ex. 10, pp. 15–17.

10

Debtor defends her behavior by claiming that the omissions and non-disclosures were inadvertent, unintended or innocent. Although the court accepts the possibility that the failure to disclose Debtor's prior use of the name Fuller may have been an oversight, it otherwise rejects Debtor's asserted defenses. The court does not credit Debtor's explanation regarding her failure to disclose her remainder interest in the Clinton Street Property. Debtor has been employed as a real estate broker for almost a decade and has participated in numerous real estate transactions representing both buyers and sellers. As such, her assertion that she did not disclose her remainder interest because she did not think of the Clinton Street Property as hers is unconvincing. Further, Debtor failed to provide a credible explanation for her failures to disclose the bank accounts or the cash kept on hand in the gun safe. Upon review of the evidence, including Debtor's trial testimony, the court finds that Debtor's non-disclosures and secreting of assets demonstrate a clear and actual intention to hinder, delay or defraud a creditor, specifically, the Plaintiff.

Accordingly, the court sustains the Plaintiff's objections under §§ 727(a)(2)(A) and (B).

*Section 727(a)(4)(A) – False Oath or Statement*

A debtor who knowingly and fraudulently makes a false oath or account may be denied a discharge under section 727(a)(4)(A). The party objecting to the discharge must establish five elements: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case." *Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 59 (E.D.N.Y. 2010) (internal quotation omitted). "Deliberate omissions from a debtor's schedules or statement of financial affairs may represent false oaths or accounts that warrant the denial of the debtor's discharge." *Fangio v. Russell (In re Russell)*, 507 B.R. 786, 796 (Bankr.

11

N.D.N.Y. 2014); *see Self*, 325 B.R. at 245–47. Provided the objecting party establishes these five elements, the burden shifts to the debtor to proffer a credible explanation for the false statement or to demonstrate that the error resulted from an honest mistake. *E.g., Russell*, 507 B.R. at 796.

There is no dispute that the first and second elements have been met. Plaintiff challenges Debtor's statements and omissions contained in her petition, schedules and statement of financial affairs, all of which are statements under oath for purposes of section 727(a)(4)(A). And, Debtor admits that the challenged statements are false. Debtor asserts, however, that the challenged statements and omissions were not made knowingly or with the intent to deceive, nor were they material to the case.[11] The court disagrees.

The knowledge requirement of section § 727(a)(4)(A) is met when the debtor—knowing what is true—intentionally swears to what is false. *See, e.g., Moreo*, 437 B.R. at 62. Based upon Debtor's testimony, there is little doubt that Debtor knew of her interest in the Clinton Street Property, the bank accounts and the funds held in the gun safe at the time of the filing. "To find the requisite degree of fraudulent intent, a court must find that the debtor knowingly intended to defraud or engaged in behavior that displayed a reckless disregard for the truth." *Self*, 325 B.R. at 248; *see also Moreo*, 437 B.R. at 62 (citing cases). A debtor's intent to deceive may be inferred "from a series of incorrect statements and omissions contained in the schedules." *Moreo*, 437 B.R. at 62. Debtor's many omissions were either the subject of stipulation or admitted in her testimony. Thus, based upon the totality of the evidence, including consideration of Debtor's testimony, the court finds that the false statements and omissions were made by Debtor with knowledge and the intent to deceive. *See James v. Tipler (In re Tipler)*, 360 B.R.

---

[11] Debtor's counsel does not elaborate upon these contentions in his post-trial memorandum. Instead, counsel's argument focuses upon the record-keeping practices of the Debtor, which are not at issue here as Plaintiff has not objected to discharge under § 727(a)(3).

333, 354–55 (Bankr. N.D. Fla. 2005). The court's conclusion is bolstered by Debtor's admissions that she (i) made undisclosed, preferential payments to other creditors of Waite Enterprises, Inc., and (ii) changed her normal practice regarding the depositing of her commission checks— specifically to prevent Plaintiff from levying on her accounts. *Cf. Moreo*, 437 B.R. at 64 (finding that the determination of debtors' fraudulent intent was bolstered by debtors' other fraudulent conduct).

Further, the court finds that the challenged statements and omissions are materially related to the case. "An item is material if it is related to the debtor's 'business transactions or estate which would lead to the discovery of assets, business dealings, or existence or disposition of property.'" *Moreo*, 437 B.R. at 65 (quoting *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228 (E.D.N.Y. 2000)). Materiality does not require that the creditor is either prejudiced by or suffers detriment as a result of the false oath or omission. *See Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228–32 (E.D.N.Y. 2000); *Self*, 325 B.R. at 249. Debtor's statements and omissions involved, among other things, undisclosed assets and certain preferential payments. Thus, Plaintiff has demonstrated that the false statements and omissions related materially to the case. *See Russell*, 507 B.R. at 796; *Murray*, 249 B.R. at 230; *Town of Skaneateles v. Scott (In re Scott)*, 233 B.R. 32, 45 (Bankr. N.D.N.Y. 1998) ("It is well-settled that the failure to disclose an asset's existence is almost always material, given the need for creditors to accurately identify and inventory the debtor's property.").

Plaintiff having established each of the requite elements, the burden shifted to Debtor to offer a credible explanation for the omissions or demonstrate that the errors were the result of an honest mistake or misunderstanding. Upon review of the evidence, the court finds that the Debtor has failed to meet her burden. As discussed above, the court rejects Debtor's explanation

for the failure to schedule the Clinton Street Property. Her subsequent amendment of schedule A, which proved inaccurate, does not remedy the defect. *See Moreo*, 437 B.R. at 62 ("[W]hile subsequent disclosure before an objection to discharge is filed may be some evidence of innocent intent, . . . the effect of a false statement is not cured by correction in a subsequently filed schedule." (citation omitted)). In any event, Debtor failed to offer a credible explanation for her failure to disclose the bank accounts and cash-on-hand held in the gun safe. Moreover, she offered no explanation as to why these assets were not themselves the subject of additional amendments to the schedules.

The Plaintiff's objection under § 727(a)(4)(A) is, therefore, sustained.

*Dismissal for Bad Faith Filing*

Plaintiff seeks alternative relief in the form of the dismissal of the case "for cause" pursuant to § 707(a) for Debtor's failure to file in good faith. In light of the court determination that Debtor's discharge be denied and the chapter 7 trustee's report of full administration of the estate, the court need not address the alternative relief requested.

## CONCLUSION

For the foregoing reasons, the court finds that the Debtor's discharge be denied pursuant to §§ 727(a)(2)(A) and (B) as well as (a)(4)(A). A separate judgment will be entered in accordance with Fed. R. Bankr. P. 9021.

Dated: August 22, 2014
      Syracuse, New York

Hon. Margaret Cangilos-Ruiz
United States Bankruptcy Judge

14